UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TINA PRATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00094-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Tina Pratt ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

I.      **FACTUAL BACKGROUND**

At the hearing before the ALJ, Plaintiff testified that she has generalized anxiety, depression, and post-traumatic stress disorder ("PTSD"), for which she takes Cymbalta, Seroquel, hydroxyzine, Strattera, hydroxyzine, Seroquel, and trazodone (Tr. 219, 227); that her symptoms have improved somewhat with medication but she still has panic attacks, especially during times of stress, in which she blacks out for fifteen to 45 minutes a couple of times a month (Tr. 220, 234); that she has an irregular heart beat for which she takes propranolol (Tr. 221); that she has antiphosholipid syndrome, a blood disorder that causes clots, for which she takes aspirin (Tr. 221); that she has carpal tunnel syndrome in both arms, for which she would soon be scheduling surgery (Tr. 222-23); that she has three bulging disks in her neck (Tr. 222); that she has fibromyalgia that causes her nerves to misfire in her feet and hands, for which she takes Cymbalta (Tr. 222-23); that she has joint pain that causes her fingers, hands, wrists to swell and causes problems in her knees and hips, for which she takes Cymbalta and Plaquenil. (Tr. 224); and that she has autoimmune disorders, for which she takes methotrexate. (Tr. 226). Her medications cause fatigue, and the day after she takes methotrexate, she is wiped out and in bed. (Tr. 226). She has tried gabapentin and Lyrica in the past for fibromyalgia and joint pain, but they caused her to gain weight and become suicidal. (Tr. 223).

Plaintiff rarely leaves home by herself. (Tr. 229). It takes her a long time to do household chores, because she has trouble lifting things and because she needs to take breaks after about 20 minutes of activity. (Tr. 233). She can only lift around three to five pounds; this is because of her wrist weakness. (Tr. 229-30). She has trouble taking care of her hair because of her bulging discs and has trouble taking showers because of her depression. (Tr. 230).

With regard to Plaintiff's medical treatment records, the Court accepts the facts as presented in the parties' respective statements of fact and responses. Briefly, the record shows that Plaintiff has frequently sought treatment for pain (and sometimes numbness or tingling) in various parts of her body (including her neck, shoulder, back, knees, wrists, abdomen, and teeth) through very frequent visits to emergency rooms and through visits to her primary care provider, a rheumatologist, pain management clinics, and other providers; that she has frequently sought treatment for mental health symptoms, including depression, anxiety, and PTSD; and that she has sought treatment for opioid withdrawal on some occasions. Her treatment providers have noted diagnoses or possible diagnoses that include major depressive disorder, mood disorder, anxiety, PTSD, bipolar, neuropathy, fibromyalgia, lupus, chronic pain syndrome, migraine, and opiate withdrawal. Her treatment has consisted primarily of medication, but she has also had carpal tunnel release surgery on both arms and surgery on her right knee. Her providers frequently note that she engages in drug-seeking behavior and that she should not be given narcotics.

The record does not contain opinion evidence from any treating sources, but it does contain one psychological evaluation and two opinions from state agency medical consultants. On January 29, 2019, Thomas J. Spencer, Psy.D. conducted a psychological evaluation, diagnosed PTSD and polysubstance abuse by history, and opined that "Ms. Pratt has a mental disability which prevents her from engaging in employment or gainful activity for which her age, training, and experience or education will fit her." (Tr. 1514-17). He did not offer specific opinions regarding her mental capabilities. On April 18, 2019, state agency medical consultant Charles W. Watson, Psy.D., evaluated Plaintiff's medical records and opined that Plaintiff would have moderate limitations in several areas but that she maintained the ability to understand and remember simple work instructions, to concentrate and persist with simple work activity, and to be in a work setting with

limited interactions with co-workers and the general public and with changes introduced gradually and infrequently. (Tr. 283-85). On April 24, 2019, state agency medical consultant Michael O'Day reviewed Plaintiff's medical records and opined that in light of Plaintiff's impairments, including fibromyalgia, chronic pain syndrome, peripheral neuropathy, and lupus, Plaintiff would be limited to light work with some additional postural and environmental limitations. (Tr. 262-65).

**II.   PROCEDURAL BACKGROUND**

On November 24, 2018, and November 27, 2018, Plaintiff applied for DIB and SSI, respectively. (Tr. 368-75). Plaintiff alleged that she had been unable to work since October 2, 2016, due to major depression; generalized anxiety; complex PTSD; bipolar 1 mixed; antiphospholipid syndrome; tachycardia; scoliosis; fibromyalgia, severe back, bilateral leg, and joint pain; and chronic fatigue syndrome. (Tr. 370, 398). Her applications were initially denied. (Tr. 292-97). On April 29, 2019, and May 7, 2019, Plaintiff filed Requests for Hearing by Administrative Law Judge ("ALJ') (Tr. 299-303). On February 25, 2020, the ALJ held a hearing on Plaintiff's claims. (Tr. 213-253). On June 30, 2020, the ALJ issued an unfavorable decision. (Tr. 64-86). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 364-67). On November 25, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

**III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is

4

disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

IV. **THE ALJ'S DECISION**

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since October 2, 2016, the alleged onset date; that Plaintiff had the severe impairments of major depressive disorder, bipolar disorder, general anxiety disorder, personality disorder, post-traumatic stress disorder, fibromyalgia, lupus, and rheumatoid arthritis; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 70-71). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps and stairs; frequently climb ladders, ropes or scaffolds; frequently stoop; occasionally kneel, crouch, and crawl. In addition, the claimant cannot work at unprotected heights or around unprotected machinery; and must avoid exposure to whole body vibrations, such as operating heavy equipment either off road or on road. The claimant is limited to simple and/or repetitive work and must avoid close interaction with coworkers in the sense of no tandem jobs, teamwork jobs, or jobs that require a person to get together with coworkers to determine work duties, work processes, or work locations. Finally, the claimant is limited to jobs with no close interactions with the public, such as customer service, retail sales, or telephone type work; and is limited to jobs with only occasional changes in work settings and routines.

(Tr. 74). At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a customer service clerk, a retail sales clerk, or an assistant manager. (Tr. 79). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, with representative occupations being packer, assembler, and product inspector. Accordingly, the ALJ concluded that

Plaintiff was not under a disability, as defined in the Act, from October 2, 2016, through the date of the decision. (Tr. 81).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ failed to perform a proper evaluation of Plaintiff's pain and mental health symptoms, and; (2) that the ALJ erred in concluding that Plaintiff's carpal tunnel syndrome was not a severe impairment;

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

8

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Evaluation of Plaintiff's Pain and Mental Health Symptoms

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, "Evaluation of Symptoms in Disability Claims," 2017 WL 5180304, at *4 (Oct. 25, 2017). In making this assessment, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore*, 572 F.3d at 524 (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (same). However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he [or she] acknowledges and considers the factors before

9

discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Moore, 572 F.3d at 524).

After review of the ALJ's decision and the entire record, the Court finds that the ALJ conducted an adequate assessment of Plaintiff's symptoms of pain and mental health symptoms, consistent with SSR 16-3p and the relevant regulations, and that the assessment is supported by substantial evidence. At the outset, the Court notes that the ALJ did give significant weight both to Plaintiff's subjective complaints of pain and mental health symptoms. The ALJ explained that based on Plaintiff's pain from fibromyalgia and other physical impairments, Plaintiff would be restricted to light work with additional postural and environmental limitations. (Tr. 76). The ALJ also included in the RFC several significant mental limitations based on Plaintiff's mental symptoms, limiting Plaintiff to simple and/or repetitive work involving limited interactions with others and only occasional changes in work settings and routines.

To the extent that the ALJ did discount Plaintiff's subjective complaints, a review of the decision as a whole demonstrates that the ALJ adequately considered several of the relevant factors in evaluating Plaintiff's complaints. The ALJ expressly cited 20 C.F.R. §§ 404.1529 and 416.929, discussed the allegations in Plaintiff's function report, hearing testimony, and medical records, and conducted an express analysis of Plaintiff's subjective complaints of pain and mental health symptoms. (Tr. 74-79). With regard to Plaintiff's complaints of mental health symptoms, the ALJ considered Plaintiff's daily activities (including the ability to prepare simple meals, drive, read, manage her finances, and shop and spend time with friends); the observations of various examiners that she was pleasant, engaged, and cooperative; the ALJ's own observations of Plaintiff's ability to follow along with questions presented at the hearing and provide relevant answers; the objective mental status examination findings that were very often normal or mostly normal; evidence

10

suggesting the Plaintiff's most severe psychological issues were mostly related to periods of opiate withdrawal; evidence that Plaintiff was not always compliant with treatment recommendations, including instances in which she did not take her prescribed medications and one instance in which she signed out of the hospital against medical advice; the fact that Plaintiff had been flagged as a "poly pharmacy shopper" and thus apparently had the mental ability to think of reasons for pain medications and to obtain them from several different pharmacies over a short period of time; and the opinion evidence relevant to Plaintiff's mental impairments. With regard to Plaintiff's complaints of pain and related limitations, the ALJ considered the numerous normal musculoskeletal and neurological findings in the record, including findings of normal gait and normal extremities; Plaintiff's conservative course of treatment (which involved no physical therapy or steroid injections); evidence of daily activities such as driving and shopping; the opinion evidence related to Plaintiff's physical impairments (which did not include any opinions indicating functional restrictions more significant than those reflected in the RFC); and the fact that Plaintiff was repeatedly flagged as a frequent visitor to the emergency room, which indicated that she had more stamina than she claimed.[2] These were valid considerations in evaluating subjective complaints. *See, e.g.*, *Grindley v. Kijakazi*, 9 F.4th 622, 630-32 (8th Cir. 2021) (finding it appropriate for the ALJ to consider objective medical evidence, evidence of noncompliance with prescribed medication regimen, and evidence of misuse of opioids in assessing subjective complaints); *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding that ALJ properly considered claimant's relatively conservative treatment history when evaluating subjective

---

[2] Plaintiff argues that "the multiple trips to the emergency room could also demonstrate how severe the pain was to require several visits to the emergency room." (Pl's Br, at 8). But "when evidence presented to the ALJ could support two inconsistent positions and the ALJ adopts one of those positions, we must affirm the ALJ's determination." *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016).

11

complaints); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain). After having independently reviewed the record as a whole, the Court finds that the ALJ's findings to be generally consistent with the record and supported by substantial evidence in the record.

For the above reasons and for the other reasons discussed in Defendant's brief, the Court finds that the ALJ conducted an adequate evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons, supported by substantial evidence, for partially discounting those symptoms. The Court emphasizes that the valuation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The ALJ's decision fell within the available zone of choice, and the Court cannot disturb that decision even if the evidence might have supported a different conclusion.

### C. The ALJ's Evaluation of Plaintiff's Carpal Tunnel Syndrome

Plaintiff's second argument is the ALJ erred in finding that Plaintiff's carpal tunnel syndrome was not a severe impairment. She points to various reports by Plaintiff in the record of pain and swelling, positive objective signs, and Plaintiff's testimony regarding pain and weakness in her hands.

As discussed above, at Step Two, the Commissioner must determine whether the claimant has a "severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 404.1509 [and § 416.909], or a combination of impairments that is severe and meets the duration requirement . . . " 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) 416.909, 416.920(a)(ii). To be a "severe impairment," an impairment must "significantly limit[] [the

claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." §§ 404.1522(b), 416.922(b). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard," and the Eighth Circuit has "upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* (internal citation omitted).

At Step Two of the decision, the ALJ acknowledged that Plaintiff had carpal tunnel syndrome, cited numerous records at which Plaintiff's physicians examined her hands and wrists, and acknowledged that Plaintiff underwent a right carpal tunnel release and a right ulnar nerve decompression of the right elbow in March 2020. However, he found her carpal tunnel not severe, citing records indicating that she generally had good strength and normal range of motion in her extremities and that there were findings of normal musculoskeletal and neurological findings throughout the record. (Tr. 70).

After review of the entire record, the Court finds that the ALJ did not err at Step Two in finding Plaintiff's carpal tunnel syndrome to be a non-severe impairment. First, as the ALJ noted, despite Plaintiff's claims of wrist weakness and pain, the record does contain numerous findings throughout the record of normal wrists and hands, and normal strength, range of motion, and sensation. (Tr. 70, 585, 599, 653, 698, 931, 988, 1506, 1878, 1978-79, 2270, 2285, 2330, 2264-65, 2671, 2884, 3342, 3363, 3418). The Court also notes that although many of Plaintiff's complaints were focused on weakness in her hands, Plaintiff's neurosurgeon did not appear to attribute any weakness to the carpal tunnel syndrome; in diagnosing carpal tunnel syndrome in February 2020,

13

he stated that he found "good evidence for bilateral carpal tunnel syndrome **without weakness**, right ulnar neuropathy at the elbow, also **without weakness**," and discussed possible surgery. (Tr. 3364) (emphasis added). Additionally, Plaintiff was not diagnosed with carpal tunnel syndrome until February 2020,[3] suggesting that Plaintiff's carpal tunnel syndrome may not have satisfied the twelve-month duration requirement. Finally, the Court notes that medical records submitted to the Appeals Council are consistent with the decision not to find Plaintiff's carpal severe, because they suggest that Plaintiff's wrist problems were significantly alleviated by her surgeries. (Tr. 60, 110, 115-16, 133).

For all of the above reasons, the Court finds substantial evidence to support the ALJ's finding that Plaintiff's carpal tunnel syndrome was not severe. The Court acknowledges that there is certainly evidence in the record that would support a finding that Plaintiff's carpal tunnel syndrome was a severe impairment. However, it is not the role of the Court to reweigh the evidence, and the Court cannot say that there is so little evidence in support of the ALJ's conclusion that a reasonable mind would not find it adequate to support that conclusion.

In the alternative, assuming, *arguendo*, that the ALJ erred at Step Two in not finding Plaintiff's carpal tunnel to be a severe impairment, the Court finds that error was harmless in this case. Courts frequently find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Fendler v. Saul*, No. 4:21-CV-614 SRW, 2022 WL 3153717, at *8 (E.D. Mo. Aug. 8, 2022) (finding that even assuming the ALJ erred in finding restless leg syndrome not severe, that error was harmless because the ALJ considered all of the plaintiff's impairments after step 2); *Ennis v. Kijakazi*, No. 4:20-CV-434-

---

[3] *See* Pl.'s Br., Doc. 28, at 14.

CDP, 2021 WL 5038092, at *4 n.2 (E.D. Mo. Oct. 29, 2021) ("[A] failure to find severe impairments at Step 2 may be harmless where the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe."); *Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC.") *See also* 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). *Accord* § 416.945(a)(2)

Here, even after Step Two of the analysis, the ALJ did include some discussion of Plaintiff's complaints of difficulty using her hands and lifting things, and he cited and relied on medical records at which Plaintiff's carpal tunnel syndrome was addressed. (Tr. 75-78). Because it appears that the ALJ considered all of Plaintiff's impairments, severe and non-severe, in assessing Plaintiff's RFC, the Court finds no reversible error.

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2022.